JOHNSON, executrix, *et al. vs.* DOOLY.

1. The main question for trial in this case was, whether under all the circumstances, the father and the son's attorney had good and sufficient cause to believe that the son had abandoned to the father the son's right of property in the *fi. fa.*, or to believe that the father had implied authority from the son to transfer the *fi. fa.* Dealings by a parent with a child's rights are to be interpreted in

the light of the relation and of the special facts affecting that relation at the time of the transaction. Tarver *vs.* Jackson, 4 Peters, 99.

2. The court erred in not granting a new trial on several grounds of the motion, to-wit: the 5th, 7th, 8th, 11th and 13th.

Equity. Parent and child. New trial. Before Judge FAIN. Whitfield superior court. April term, 1887.

Dooly filed his bill against Mrs. Johnson, as executrix of her husband, J. A. W. Johnson, and against the sheriff of Murray county, making the following allegations, in substance: Complainant, individually and as guardian for children of one McOwen, owned certain lands in Murray county which had originally belonged to said McOwen. Upon these lands had been levied a *fi. fa.* in favor of B. E. Green, for the use of the Dalton City Company, against said McOwen, this *fi. fa.* having been issued upon a judgment obtained in October, 1856. The real owner of the debt upon which this judgment was obtained was one T. T. Christian, who had been allowed to use the name of Green, etc., in order to preserve a vendor's lien upon the land. Johnson & Jackson, a firm of which J. A. W. Johnson was a member, as attorneys, had obtained said judgment. Jackson died, and when the *fi. fa.* mentioned was found among his papers, Johnson took hold of it and began the managment of it. In 1879, Johnson had the *fi. fa.* levied upon the land mentioned, and bought it in at sheriff's sale, but this sale was set aside for irregularities not important to be mentioned. Afterwards, Johnson re-levied the *fi. fa.* upon the land, and while this last levy was standing, died. Johnson's executrix claims to be the owner of the *fi. fa.*, and is now seeking to enforce it against the land; she claims that her testator purchased the *fi. fa.* from E. C. B. Christian, the father of said T. T., but complainant charges that E. C. B. never owned the *fi. fa.*, but that it remained the property of T. T. Christian until December 29th, 1885, when T. T. transferred it to complainant.

By her answer, the defendant, Mrs. Johnson, alleged that the note upon which the judgment and *fi. fa.* were based, was given to Johnson & Jackson for collection by E. C. B. Christian on his own account; that it was the property of said E. C. B., and continued so to be until January, 1879, when he transferred it to respondent's testator; that Dooly was long before notified of the fact that the *fi. fa.* was outstanding, and that Johnson was seeking to enforce it as his own property, and as having been transferred to him by E. C. B. Christian, and had in various ways endeavored to harass respondent and her testator, and retard the collection of the *fi. fa.;* that, among other things, he induced one Elam Christian, son of E. C. B. and brother of said T. T., after the death of E. C. B., to take out temporary letters of administration on the estate of said E. C. B., and to file a bill against respondent's testator, in which said Elam claimed under oath that the *fi. fa.* still belonged to the estate of E. C. B., and asked that Johnson be restrained from collecting it; that this bill was afterwards dismissed by said Elam, after having been maintained in court as long as possible through the instigation of Dooly, etc.

The evidence introduced at the trial, so far as it is material to be reported, tended to show, for the complainant, that the judgment and *fi. fa.* in question originally belonged to T. T. Christian; that he turned the notes upon which they were founded over to Jackson & Johnson as his attorneys, in 1885, for collection, with instructions to use part of the proceeds to satisfy a claim held by them for Dunham & Blakeley against him, and to pay the balance over to him, said T. T. Christian; that neither of said attorneys ever accounted to him in any way, but in 1859 assured him that the Dunham & Blakeley debt was satisfactorily arranged; that he had no reason to believe they ever paid any part of that debt, and that he, said T. T., had settled that debt; and that he never gave his father, E. C. B., or any one else, except Dooly, the control of the

*fi. fa.*, and was ignorant for a long while of the fact that E. C. B. assumed control of it. It does not appear from the evidence when T. T. Christian first became aware of the fact last above stated. The evidence for complainant tended to show further, that T. T. Christian had transferred the *fi. fa.* to Dooly on December 29th, 1885, but upon what terms was not disclosed. Dooly did not seem himself to know what these terms were, but claimed that the matter had been arranged for him by his attorney. He admitted that he induced Elam Christian to administer, and to file the bill, as charged in respondent's answer, and paid said Elam's lawyers, but claimed that he thought at that time that the *fi. fa.* belonged to E. C. B. Christian, and that as soon as he found out it was T. T. Christian's property, he directed that bill to be dismissed. The Elam Christian bill was filed in June, 1884.

The testimony for the respondent tended to show that, in 1873, E. C. B. Christian claimed the *fi. fa.* and continued to claim it up to 1879, when he transferred it to Johnson; that Dooly was notified of the fact of E. C. B's claim before March, 1875, and then agreed that the *fi. fa.* should be levied on certain land as property of McOwen, and if that land could be condemned, E. C. B. Christian should have half the proceeds of the sale and McOwen's children the other half, after deducting attorneys' fees; that the land last mentioned was levied on, but was found not subject; that after the 3d of March, 1875, the *fi. fa.* was always in the hands of Johnson & McCamy, a firm of which J. A. W. Johnson was a member, as attorneys of E. C. B. Christian, until the transfer to Johnson in 1879; and that T. T. Christian made no claim to the *fi. fa.* until after October, 1885. Upon the *fi. fa.* were various entries of levies, etc. keeping it alive, which ranged in date from 1860 to 1879.

The jury found for complainant. Respondent moved for a new trial on various grounds, among which were the following:

(5) Because the court erred in charging as follows: When title to personal property is once shown to exist in one party, it is presumed to continue until proof of a sale or alienation by that person to some person is shown, and the burden is on the party alleging such sale to prove it. Presumption of ownership once established continues until some alienation is shown. The party having this ownership does not lose it by permitting another to be in possession.

(7) Error in giving the following charge: Johnson and Jackson, or the survivors of them, being T. T. Christian's attorneys, could not recognize E. C. B. Christian as the owner of the *fi. fa.* unless so instructed by T. T. Christian.

(8) Error in giving the following charge: The fact that E. C. B. Christian claimed the *fi. fa.* (if such be the fact), and notified Johnson that he claimed it, would not authorize Johnson to pay the money collected on it to E. C. B. Christian, or to take a transfer of it from E. C. B. Christian, or to allow E. C. B. to control it. Unless T. T. Christian had transferred the *fi. fa.* to E. C. B. Christian or gave him authority to control it, Johnson could not act upon E. C. B. Christian's claim of ownership except at his peril.

(11) Error in giving the following charge: The fact that Dooly may have known of and assisted Elam Christian in his effort to get control of this *fi. fa.* as administrator, cannot prejudice Dooly's rights under his transfer of the *fi. fa.* from T. T. Christian, if you find he is such transferee.

(13) Error in giving the following charge: If you find that the *fi. fa.* was T. T. Christian's, [and] do not find that he transferred it to his father or gave Johnson reason to believe that he, T. T., had transferred it to his father, the *fi. fa.* still remains his.

The motion was overruled, and the defendant excepted.

R. J. McCamy, for plaintiffs in error.

McCutchen & Shumate and T. R. Jones, *contra.*

BLECKLEY, Chief Justice.

This is a controversy in equity over the equitable ownership of a certain *fi. fa.* The *fi. fa.* was in favor of Green, for the use of the Dalton City Company, against McOwen; and the question is, whether it belonged at a certain time to Christian the father, or Christian the son, or rather, whether the father was justified in transferring it. Although the name of neither of these persons appears as a party to the *fi. fa.* or in connection with the suit out of which the *fi. fa.* issued, there is no doubt that Christian, the son, was the original equitable owner, but Christian, the father, transferred it to Johnson, who was the attorney that represented the plaintiff in procuring it; and if he transferred it by the son's implied or express authority, Johnson's executrix, who is now claiming it, is the equitable owner. We think that the case was not properly tried upon the real controlling question, and therefore that a new trial ought to be granted, and the head-notes will explain our views as fully as it is necessary to state them.

We see no reason for sustaining any of the grounds of the motion for a new trial, except those indicated in the second head-note. The circumstances detailed in the evidence suggest very powerfully that the son had abandoned to the father, not by words, but by conduct, his rights of property in the *fi. fa.*, or that both the father and Johnson had good cause so to believe, or to believe that the father had implied authority to use the *fi. fa.* or dispose of it as he pleased. The opinion of the jury on this element ought to control the case.

Judgment reversed.